## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 21 2017, 6:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer D. Wilson Reagan
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Elizabeth M. Littlejohn
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher L. McAllister,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 21, 2017

Court of Appeals Case No.
41A04-1701-CR-46

Appeal from the Johnson Superior Court.
The Honorable Lance Hamner, Judge.
Trial Court Cause No.
41D03-1610-CM-1159

**Barteau, Senior Judge**

## Statement of the Case

[1]  Christopher L. McAllister executed a plea agreement with the State and appeals the sentence the trial court imposed for his conviction of driving while

intoxicated in a manner endangering a person, a Class A misdemeanor. We dismiss this appeal.

## Issues

McAllister raises one issue, which we restate as: whether McAllister's sentence is inappropriate in light of the nature of the offense and the character of the offender. On cross-appeal, the State asks the Court to dismiss McAllister's appeal, claiming he has waived his right to appeal his sentence.

## Facts and Procedural History

On July 3, 2016, Deputy Reese of the Johnson County Sheriff's Department was dispatched to investigate a report of a dangerous motorcyclist on Highway 31. A concerned citizen had called 911 to say he or she saw a motorcyclist driving on the shoulder of the road. Reese saw the motorcyclist, later identified as McAllister, weaving and driving fifty-five miles per hour in a forty-five mile per hour zone.

Deputy Reese stopped McAllister and approached the motorcycle. The motorcycle's engine was still running, so Reese asked McAllister to put the motorcycle on its kickstand and turn it off. Reese asked McAllister for his license. He could smell the odor of an alcoholic beverage on McAllister. In addition, McAllister's eyes were bloodshot and glassy, and his speech was slow. He denied consuming alcohol, and when Reese told McAllister he could smell an alcoholic beverage, McAllister said he was on his way home from work.

[5]     Deputy Reese administered three sobriety tests:  the horizontal gaze nystagmus, the nine step walk and turn, and the one leg stand.  McAllister failed all three tests, displaying poor manual dexterity and difficulty with balance.  Next, Reese offered to administer a portable breath test.  McAllister took the test, which revealed a blood alcohol content of 0.157.

[6]     Deputy Reese asked McAllister to take a certified blood test, and McAllister refused.  Reese took McAllister to jail and held him there while seeking a search warrant for a blood draw.  The Johnson County Circuit Court issued the search warrant, and Reese took McAllister to a hospital for the blood draw.  The blood test showed a blood alcohol content of 0.15.

[7]     The State charged McAllister with operating a vehicle while intoxicated in a manner endangering a person, a Class A misdemeanor; operating a vehicle with an alcohol concentration of at least 0.15, a Class A misdemeanor; operating a vehicle while intoxicated, a Class C misdemeanor; and operating a vehicle with an alcohol concentration of less than 0.15 but more than 0.08, a Class C misdemeanor.  The parties began negotiating a plea agreement.  McAllister was initially released on bond, but the State moved to revoke his bond after he was arrested in Kentucky on a charge of operating while intoxicated.

[8]     McAllister and the State executed a plea agreement.  McAllister agreed to plead guilty to operating a vehicle while intoxicated in a manner endangering a person, a Class A misdemeanor.  The remaining counts would merge into the Class A misdemeanor.  The parties agreed to an "open sentence," meaning the

sentence would be left up to the court. Appellant's App. Vol. 2, p. 13. McAllister wrote his initials next to each term of the agreement, including the following clause: "I acknowledge that I may have the right to challenge this agreement and the resulting conviction and sentence. By entering into this plea agreement I hereby waive any right to appeal the conviction and/or sentence in this cause by direct appeal so long as the Judge sentences me within the terms of my plea agreement." *Id.* at 12.

The trial court held a guilty plea hearing, during which it considered the State's motion to revoke bond. The court read through the plea agreement with McAllister, and McAllister acknowledged that he had read, understood, and signed the agreement. McAllister conceded he had no grounds to contest the bond revocation and suggested that he be sentenced that day. The court accepted the plea agreement but declined to sentence McAllister at that time, scheduling the sentencing hearing for a later date.

At the sentencing hearing, the court sentenced McAllister to a year in jail, the maximum possible sentence. In addition, the court suspended his driver's license for two years. Finally, the court advised McAllister of his right to appeal and appointed counsel to represent him. This appeal followed.

## Discussion and Decision

We first address the State's cross-appeal claim because waiver of the right to appeal, if established, will dispose of the case. The State argues McAllister waived his right to appeal pursuant to the parties' plea agreement. The validity

and interpretation of a plea agreement is a question of law. We evaluate questions of law under a de novo standard and owe no deference to the trial court's determinations. *Bowling v. State*, 960 N.E.2d 837, 841 (Ind. Ct. App. 2012), *trans. denied*.

[12] A defendant may waive the right to appellate review of a sentence as part of a written plea agreement. *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008). The waiver must be made knowingly and voluntarily. *Bowling*, 960 N.E.2d at 841.

[13] In *Creech*, the appellant executed a plea agreement in which sentencing was left to the discretion of the trial judge, subject to a cap of six years executed. The agreement further provided, "I hereby waive my right to appeal my sentence so long as the Judge sentences me within the terms of my plea agreement." 887 N.E.2d at 74. The court imposed a six-year sentence.

[14] On appeal, Creech sought to challenge the appropriateness of his sentence. The Indiana Supreme Court concluded the "express language" of the plea agreement established waiver of Creech's right to appeal the sentence. *Id.* at 76. Further, although the trial judge erroneously advised Creech at the end of the sentencing hearing that he had a right to appeal, the Court concluded the advisement did not make a difference because "Creech had already pled guilty and received the benefit of his bargain." *Id.* at 77.

[15] In the current case, the waiver clause in the parties' plea agreement closely tracks the waiver clause in *Creech*. Further, as in *Creech*, the trial court's mistaken advisement that McAllister had the right to an appeal occurred after

McAllister had pleaded guilty and had received the benefit of his bargain. We conclude McAllister has waived his right to appeal his sentence and grant the State's request for dismissal of the appeal. *See Starcher v. State*, 66 N.E.3d 621, 623 (Ind. Ct. App. 2016) (enforcing written waiver of right to appeal sentence despite trial court's erroneous advisement at sentencing that defendant had a right to appeal), *trans. denied*.

# Conclusion

For the reasons stated above, we dismiss this appeal.

Appeal dismissed.

Bailey, J., and Robb, J., concur.